## Case No. 2,645.

CHESAPEAKE & O. CANAL CO. v. BINNEY.

[4 Cranch, C. C. 68.][1]

Circuit Court, District of Columbia. May Term, 1830.

EMINENT DOMAIN—THE INQUISITION—CONTENTS—DESCRIPTION OF LAND — DISQUALIFICATION OF JUROR.

Quaere, whether a person who subscribed for stock in the Chesapeake and Ohio Canal Company, without paying a dollar a share at the time of subscribing, and who has never been required to pay any of the instalments called for by the company, can be considered as a stockholder, so as to disqualify him to serve upon an inquisition to condemn land for the canal? It is not necessary that an inquisition, taken under the charter of that company, should contain the names of such jurors as were summoned but not sworn. The land condemned is sufficiently described by reference, in the inquisition, to the description of it in the warrant.

CRANCH, Chief Judge (THRUSTON, Circuit Judge, not, sitting). This was an inquisition condemning land for the canal, under the fifteenth section of the charter.

Mr. Key, for the defendant, moved to set as'de the inquisition: 1. Because John G. Wilson, one of the jurors, was a stockholder in the company. 2. Because the whole number (18) of jurors summoned, were not named in the inquisition. 3. Because the land valued is not described in the inquisition, otherwise than by reference to the warrant.

1. It is alleged that he was a stockholder because he was an original subscriber. The facts, in regard to this question, are admitted to be, that Mr. Wilson subscribed for three shares of the stock, but has never paid the dollar per share required by the charter to be paid at the time of subscription. That, some time afterward, in speaking of the stock to several persons, among whom was Mr. A. Hunter, he remarked, that he wished he had not taken any of the stock. Mr. Hunter replied that if he was tired of it, he would take it off his hands. That Mr. Wilson told him he should have it, and he never

gave himself any further trouble about it, as he did not consider himself a stockholder; and was not aware that his name was on the list of stockholders until he was informed of it since the taking of the inquisition. That Mr. Hunter was one of the commissioners for receiving subscriptions at Harper's Ferry, where Mr. Wilson subscribed, and put his initials opposite the name of Mr. Wilson as having received the subscription money. That Mr. Wilson never paid anything upon the stock, and has never been required to pay any of the instalments which have been called for by the company. That his name was returned, as a subscriber, by the commissioners, to the board of public works in Virginia, agreeably to the second section of the charter. By the fifth section, it is provided, that upon all subscriptions which shall not be paid in the certificates of the stock or debts of the old Potomac Company, there shall be paid, at the time of subscription, on each share, one dollar; and thereafter, when the company shall be formed, the whole stock subscribed shall be paid in such instalments, and at such times as the president and directors shall, from time to time, require; and when any subscriber shall fail to pay any instalment called for by the company, it shall be lawful for the company, upon motion and ten days' notice, to obtain judgment against the subscriber so failing to pay; or may sell the stock of such subscriber, and the purchaser shall become a stockholder, and entitled to the same privileges as an original subscriber. And, by the seventeenth section, the stockholders may transfer their shares by deed registered in the company's books, and not otherwise, except by devise.

It is clear by the state of the case, that Mr. Wilson was not interested in the stock of the company at the time of the taking of the inquisition, unless he could then have been compelled to pay either the original dollar per share required to be paid at the time of subscribing, or to pay the instalments, or had then a right to make such payment and become a stockholder. He certainly was not then a stockholder, having never paid for, nor purchased any part of the stock; nor do I think he could then be called a subscriber; for there could be no valid subscription which could bind the company to admit him as a partner unless the dollar per share were paid at the time of subscription. There was no means of compelling him to pay the dollar per share. The remedy, given by the fifth section, is only for instalments called for by the president and directors, after the company was formed. I do not think he was a subscriber within the meaning of the charter so as to be charged with instalments, and to participate in the profits of the company. But if I should be mistaken in this view of the subject, as my brother judge, for whose opinion I have the highest respect, thinks I am, I concur with him in opinion, that if Mr. Wilson had been legally bound to pay the

dollar per share which was to have been paid at the time of subscription, and might have been held bound at law to pay the instalments, yet, under the circumstances of this case he might be relieved in equity, and would, as a stockholder, be considered as a mere trustee for Mr. Hunter. I consider him, therefore, as having been quite free from any interest whatever in the stock of the company at the time of taking the inquisition.

2. The second cause alleged for setting aside the inquisition is, that the names of those jurors who were summoned but not sworn upon the inquest are not given in the inquisition. As I cannot perceive why they should have been named in it, I cannot see that the omission to name them is any cause for setting it aside.

3. The third cause alleged for setting it aside is, that the land condemned is not described in the inquisition otherwise than by reference to the warant, which the marshal in his inquisition, says he returns therewith. "Id certum est quod certum reddi potest." I do not see any use in burdening the records with a repetition, in the inquisition, of the description contained in the warrant.

These seem to me to be the only objections, applicable to this case, which were not considered and overruled in Mr. Key's Case [Case No. 2,649], at May term, 1829; and are also now overruled.

At December term, 1830, the inquisition was set aside because the jury by mistake had not given damages for a bridge which Mr. Binney was obliged to build to connect his land, which was intersected by the canal.